CARTER, Judge.
This is an appeal from a trial court judgment enjoining enforcement of an emergency rule adopted by the Electronic Video Bingo (EVB) Panel.
BACKGROUND
Joseph Atiyeh is the proprietor of two commercial bingo halls located in Baton Rouge, Louisiana. Nonprofit organizations lease Atiyeh’s bingo halls for the purpose of conducting sessions of charitable gaming. The nonprofit organizations are licensed to conduct charitable gaming by the Division of Charitable Gaming of the State Police.[1] At all times pertinent hereto, Ati-yeh was not required to have a license from any state agency to lease his building to nonprofit organizations for charitable gaming.[2] The rent for each session of *236 charitable gaming which nonprofit organizations pay to Atiyeh is limited by LSA-R.S. 33:4861.12 A(7) to a reasonable market rental rate and, more particularly, by an ordinance of the Parish of East Baton Rouge and the City of Baton Rouge to $550.00 per session.[3]
Properly licensed charitable organizations are permitted by LSA-R.S. 33:4861.17 to lease electronic video bingo machines from the distributors or suppliers of such machines for use in charitable gaming sessions. American Coin Machines, Inc. (American Coin) is a distributor and lessor of electronic video bingo machines. At all times pertinent hereto, electronic video bingo was regulated by the Attorney General rather than by the State Police Division of Charitable Gaming.[4] See LSA-R.S. 33:4861.17. The Attorney General is authorized by LSA-R.S. 33:4861.17 F to “adopt, pursuant to the Administrative Procedure Act, additional rules and regulations governing the use of electronic bingo machines .... ”
Atiyeh and American Coin both operate for-profit businesses which do not conduct charitable gaming, but which transact business with the nonprofit organizations engaged in charitable gaming.
On April 10 and 11, 1989, Atiyeh and American Coin entered into lease agreements for the lease of space to place electronic video bingo machines at Catfish Town Bingo and Catfish Town Bingo II, respectively. American Coin then leased the machines located at the bingo halls to the various nonprofit organizations for use during charitable gaming sessions.
On or about February 14, 1990, the Attorney General adopted an emergency rule seeking to limit the payment or rental rate charged by a commercial lessor of a bingo hall to the distributor of electronic video bingo machines.[5]
FACTS
On February 21, 1990, American Coin filed a petition for declaratory judgment, in essence seeking a reduction of its lease obligations under its conventional lease with Atiyeh. Thereafter, Atiyeh answered American Coin’s petition and filed a third party demand against the Attorney General seeking injunctive relief from enforcement of the newly adopted emergency rule. The Attorney General filed several exceptions, all of which were denied.
On April 10, 1990, a hearing was held on Atiyeh’s third party demand for a preliminary injunction against the Attorney General. After hearing the evidence, the trial judge, for oral reasons assigned, granted Atiyeh’s request for a preliminary injunc *237 tion. The parties subsequently stipulated that the hearing and judgment on the preliminary injunction would constitute a full trial and judgment on the permanent injunction. On April 12, 1990, judgment was rendered on the third party demand in favor of Atiyeh and against the Attorney General permanently enjoining the EVB Panel from enforcing the emergency rule, adopted on February 14, 1990, against Ati-yeh.
From this adverse judgment, the Attorney General appealed assigning the following errors:
1. The trial court erred as a matter of law by ruling, despite the incorporation provisions of LSA-R.S. 33:4861.17, that LSA-R.S. 33:4861.12.A(7) does not apply to the lease arrangements between the EVB distributer (sic) and the commercial hall owner.
2. Although industry-wide violations of LSA-R.S. 33:4861.12.A(7) existed, the trial court found that there was no emergency sufficient to invoke the emergency rule procedures of the Administrative Procedure Act.
3. The trial court impermissibly shifted the burden of proof upon the agency and not the party attacking the validity of the emergency rule.
ASSIGNMENT OF ERROR NO. 1
In this assignment of error, the Attorney General contends that the trial court erred in finding that the Attorney General does not have the authority to regulate all aspects of the electronic video bingo industry, including the distributor’s relationship with the commercial hall owner. The Attorney General reasons that, pursuant to LSA-R.S. 33:4861.17 and LSA-R.S. 33:4861.12 A(7), he has the authority to regulate the relationship between American Coin and Atiyeh.
LSA-R.S. 33:4861.12 A(7) provides that:
No lease providing for a rental arrangement for premises or equipment shall provide for payment in excess of the reasonable market rental rate for such premises or equipment and in no case shall any payment be based on a percentage of gross receipts or profits derived from a game of chance.
LSA-R.S. 33:4861.17 F[6] provides as follows:
The attorney general is authorized to adopt, pursuant to the Administrative Procedure Act, additional rules and regulations governing the use of electronic bingo machines and may establish a list of manufacturers, distributors, suppliers, and lessors authorized to provide electronic bingo machines or a list of acceptable models of the machines, or acceptable serial numbers on such models or manufacturers, distributors, suppliers, or lessors.
In reading these statutes in conjunction with LSA-R.S. 33:4861.1 et seq. (the Charitable Raffles, Bingo and Keno Licensing Law), the trial court determined that these provisions did not purport to regulate the relationship between two private, non-charitable organizations and that, as such, Atiyeh was entitled to an injunction, enjoining the Attorney General from enforcing the newly adopted rule.
We agree. The Charitable Raffles, Bingo and Keno Licensing Law and, specifically, LSA-R.S. 33:4861.12 A(7) purports to regulate charitable gaming by nonprofit organizations as well as the relationships between charitable organizations and providers, including lessors, distributors, etc. These provisions, as they existed at all times pertinent hereto, however, do not purport to regulate the relationship among the various providers. Indeed, at all times pertinent hereto, commercial hall owners and/or electronic video bingo distributors were not licensed, and specific statutory *238 provisions governed the noncharitable organizations only insofar as their dealings with charitable organizations, which are clearly subject to regulation.
Further, although LSA-R.S. 33:4861.17 F[7] gives the Attorney General authority to make rules and regulations to establish lists of manufacturers authorized to provide electronic video bingo equipment and other related functions, such provision does not permit the Attorney General to regulate the relationship among various providers.
After carefully reviewing the entire record in this matter and the relevant statutory provisions in effect at the time, we find that the trial court correctly determined that the Attorney General was without authority to regulate the private contractual relationship between providers and properly granted the permanent injunction.
Because of our resolution of assignment of error number 1, we find it unnecessary to address the remaining issues raised by the Attorney General.
CONCLUSION
For the above reasons, the trial court judgment on the third party demand in favor of Atiyeh and against the Attorney General, permanently enjoining the EVB Panel from enforcing its February 14, 1990, emergency rule against Atiyeh, is affirmed. Costs on appeal in the amount of $446.86 are assessed against the Attorney General.
AFFIRMED.

. See LSA-R.S. 33:4861.1 et seq. and LSA-R.S. 40:1485.1 et seq.

. By Acts 1990, No. 767, § 1, effective September 7, 1990, the Legislature enacted LSA-R.S. 40:1485.8 relative to commercial lessor licenses, which provides as follows:
A.Any person leasing any premises for the conducting of charitable gaming activities shall obtain a commercial lessor’s license for each premises to be licensed. A commercial lessor's license shall authorize a person to lease specific premises to licensees for the conducting of charitable gaming activities. The division, upon application and compliance with other provisions for licensure contained in this Part, shall issue a commercial lessor’s license to qualified persons.
B. No lease of any premises by a commercial lessor to any charitable organization for any charitable gaming session shall provide for payment in excess of the reasonable market rental rate for such premises as provided in the local licensing ordinance. No lease shall provide for rental for less than a four hour session.
C. No commercial lessor shall require the payment of any other cost or fee from a charitable organization other than the rental amount provided for by the rental agreement or contract or charge admission fees to persons entering the premises to participate in the charitable gaming activities.
D. No commercial lessor leasing premises for authorized charitable gaming activities shall enter into any agreement with a distributor of gaming supplies for the use, purchase, *236 promotion, or sale of charitable gaming supplies.

. See Ordinance 9004, § 4A.

. By Acts 1990, No. 767, § 1, effective September 7, 1990, the regulation and supervision of electronic video bingo was transferred from the office of the attorney general to the Charitable Gaming Division of the Louisiana State Police.

. The emergency rule provides as follows:
Section 105. Registration of Manufacturers, Distributors or Owners of Electronic Video Bingo Machines.
11. Lease agreements for rental space for Electronic Video Bingo Machines between bingo hall owners and Electronic Video Bingo Machine Distributors must be in writing and filed with the Department.
12. The maximum rental rates allowable in leases between Electronic Video Bingo Distributors and hall owners shall be the reasonable market rental rate (RMRR) as mandated by R.S. 4861.12(G) which shall be computed using the RMRR formula as follows:
REASONABLE MARKET RENTAL RATE FORMULA RMRR INDEX
A — Allowable Square Feet Per Machine 4' X 4" = 16 Square Feet
B — Number of Machines
C — Total Square Feet Allowed for EVB Machines in Hall
D — Total Square Feet of Hall
E — Ratio of EVB Square Footage to Hall Square Footage
F — Rental Fee Per Session Electronic Video Bingo
G — Number of Sessions
H — Hall Rental Fee
I — Maximum Allowable Reasonable Market Rental Rate Per Month
RMRR FORMULA
1. A x B = C
2. C -r D = E
3. E X H = F
4. F X G = I

. This provision was also amended by Acts 1990, No. 767, § 1 to reflect transfer of regulation and supervision of electronic video bingo from the attorney general to the division. See Footnote 4.

. See Footnote 6.